STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
CHARLES P. CONNER, PLAINTIFF IN ERROR.

Submitted December 1, 1921—Decided July 20, 1922.

1. While great latitude is allowed in a cross-examination of a
   prosecutrix on the trial of an indictment for rape, it was proper
   to overrule a question who, if anybody, urged her to make a com-
   plaint, where there was an entire lack of evidence that would
   justify the inference that she was so urged.
2. A prosecutrix on the trial of an indictment for rape was asked
   when she had her menstrual period near the time of the alleged
   rape—*Held*, that the question was relevant, as it tended to am-
   plify her story, and to some extent to corroborate her assertion
   that she had had sexual intercourse with some male at or about
   the time stated by her.
3. A question asked a witness on cross-examination relating to a
   collateral matter is properly excluded, even though such question
   is put for the purpose of laying a foundation for contradicting
   the witness if the answer was in the negative.
4. A question asked the prosecutrix on an indictment for rape, the
   answer to which would throw light on her physical condition
   after the alleged assault, is relevant.
5. Where the court erroneously excluded a question on a material
   point, but the witness subsequently testified fully on the subject,
   the error was harmless.
6. When the trial court, in charging the jury upon what constitutes
   reasonable doubt as to the guilt of the accused, said, "a reason·
   able doubt as to the guilt or innocence of the defendant does not
   mean any doubt that you may have; it means such doubt as a
   reasonable man might entertain after considering the testimony
   in the case," while inaccurate in a legal sense, was more favorable
   to the defendant than if correctly charged.

On error to the Gloucester County Court of Quarter Ses-
sions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and KALISCH.

For the plaintiff in error, *George B. Marshall.*

For the state, *Oscar B. Redrow,* prosecutor of the pleas.

The opinion of the court was delivered by

KALISCH, J. The assignments of errors, relied on and argued in the brief, on behalf of the plaintiff in error, for a reversal of the judgment against him on his conviction of rape in the Gloucester County Quarter Sessions, will be considered in the order in which they are presented.

The first contention, based on the third assignment of error, is that the court refused to allow, on cross-examination of the prosecutrix, the inquiry as to who, if anybody, urged her to make the complaint in this cause. While it is true that in cases of rape the general practice is to permit a greater latitude in cross-examining the prosecutrix than is usually accorded in ordinary cases to a defendant, because of the nature of the accusation and the difficulty to defend against such a charge, nevertheless, a failure to exercise judicial discretion cannot properly be assigned as error. Moreover, we are unable to perceive the competency of the question put to the prosecutrix, whether it was Mrs. Martin who urged her to make the complaint, in the absence of any proof tending to establish that anyone urged her to that end. It is manifest that the question contained an unwarranted assumption of the fact, in that it assumed that the prosecutrix was urged by someone to make the complaint, whereas there was no testimony or circumstance which could fairly raise the inference that she was so urged.

The next assignment relied on and argued is the fifth, which challenges the legal propriety of the action of the court in allowing the state, on redirect examination of the prosecutrix, to ask when she had her menstrual period in October.

In support of this assignment, it is argued that it was in no sense proper redirect examination, and secondly, that it had no relevancy to the case. As to the first contention it is quite clear, since it appears by the record, that counsel of the state had omitted to ask the question upon the examination-in-chief and asked permission of the court to put

the question, no legal rule was violated by the judge in allowing the inquiry.

The second contention is also without legal force. The inquiry apparently sought to elicit from the prosecutrix whether the sexual intercourse had been fully completed. We cannot say that the question was clearly irrelevant, since it tended to bring to the surface an amplification of the story told by the prosecutrix and to enforce her truthfulness only to the extent, however, that she had had sexual intercourse with some male, at or about the time stated by her. It was evidential of her condition as a consequence of the alleged sexual intercourse. But even though the question put was both irrelevant and immaterial, we are unable to perceive that its admission was harmful to the accused, since he confessed having had sexual intercourse with the prosecutrix, at the time she stated that it took place, but claimed that such intercourse was with her consent.

Next, it is urged under the sixth assignment, that the court erred in allowing the mother of the prosecutrix to testify as to what she noticed as to the condition of her daughter's sexual organs at the time the latter made complaint of the attack upon her, which was, according to the testimony, on the day following the night of the occurrence.

The theory upon which counsel of plaintiff in error attempts to uphold this assignment, is that the mother was not an expert. But this objection is clearly frivolous. The appearance of the girl's parts was not a subject which required expert testimony. Anybody who noticed the condition of the parts was competent to testify to it.

The seventh assignment of error which is next argued in the brief presents the question, whether the trial judge properly excluded testimony offered on behalf of the accused. The mother of the prosecutrix was asked on her direct examination, whether when a Mrs. Conner, mother of the accused, came to see the witness on Monday night, she did not ask Mrs. Conner if she was the lady who owned the dance pavilion. That this was not cross-examination and was

an inquiry relating to a collateral matter, was practically conceded in the reply of a counsel of the accused to the question asked him by the court as to how the inquiry was material when he said that his object in putting the question was to lay a foundation for contradicting the witness, if her answer was in the negative. Of course, this he could not properly be permitted to do. See *State* v. *Mor,* 85 *N. J. L.* 558.

Next, it is argued, under the eighth assignment, that it was harmful error to admit the testimony of the brother of the prosecutrix as to whether or not on the Sunday following the alleged assault upon her, he noticed whether she ate anything at meal time. The question, obviously, called for an answer, yes or no. The witness, however, answered: "She ate a little; she didn't eat very much, she didn't seem to have any appetite." The answer was not objected to nor was any motion made to strike it out; but, assuming that the objection to the question is broad enough to include within its scope, objection to the answer, we think the inquiry was competent and relevant. The testimony of the prosecutrix was to the effect that she had been violently assaulted and ravished. It is, therefore, apparent that her physical and mental condition, following the assault, as observed by the witness within a short period of time after its occurrence, was relevant as tending to enforce the truth of her story that an assualt had been made upon her.

It is next argued, under the tenth assignment, that the court improperly excluded on the defendant's direct examination, the question, "Why did you want to be awakened at seven o'clock?" He had prior thereto testified that he had made an engagement to meet the prosecutrix on Sunday evening of the day following the day of the alleged assault; that he came home sick on Sunday afternoon and went to bed, leaving word with his mother to awaken him at seven o'clock and that she failed to do this.

As the defendant had previously testified that he had an engagement with the prosecutrix to meet her again on Sunday

evening, the question, apparently, was preliminary to seeking to ascertain whether he kept his engagement and if not the cause of such failure. Although the testimony that such a tryst was made came solely from the lips of the accused, nevertheless it was clearly pertinent to the defence set up by him, namely, that his sexual intercourse with the prosecutrix was without force and with her consent. For, if his statement was true, it was a circumstance that would have had more or less weight on the question whether violence of any kind was used by the accused. It is not a natural act for a woman who has been ravished against her will to make an appointment to meet her ravisher again on the following evening. Therefore, the absence of any proof that the accused kept his appointment would be a circumstance that would tend to annihilate the truth of his story in that respect. It seems to us that on the plain principles of the law of evidence and natural justice the accused was entitled to explain, if he could, why he failed to keep the alleged appointment. In denying him this right the court erred. But this error in excluding the question does not lead to a reversal, for it is apparent from a reading of the entire testimony of the accused that the error was harmless. The defendant subsequent to the overruling of the question testified as to the cause why he did not keep the appointment alleged to have been made by him with the prosecutrix, which testimony in effect was a full and complete answer to the overruled question.

The twentieth assignment of error which is next argued and relied on as ground for reversal, is founded upon the assertion that the trial judge refused to charge the defendant's second request, as requested, and which was as follows: "If the complaining witness did not resist the efforts of the defendant to have intercourse to the last, but consented to such act of intercourse at any time prior to the commission of the act by her acts, manner and conduct, the defendant cannot be convicted of rape."

State v. Conner.        *97 N. J. L.*

The trial judge said: "That is more or less a repetition of the first request. I will so charge that that is the law on the subject. However, the allegation of force in the absence of previous consent is proved by any complete evidence showing that either the person of the woman was violated and her resistance overcome by physical force, or that her will was overcome by the fear of death or by duress. In either case the allegation is complete, although she ceased to offer resistance before the act was finally consummated."

The contention of counsel is that this added statement to his request, in effect, nullified it in its principal element, namely, in that it eliminated from the request any consideration of the conduct of the prosecutrix while in the act of sexual intercourse with the defendant. But a plain reading of what the trial judge said does not warrant any such inference. It was an accurate statement of the law and is not fairly subject to the criticism passed upon it.

The twenty-first assignment of error is predicated upon what the trial judge said in amplification of a request of counsel of defendant that the jury be instructed, as follows: "If there is a reasonable doubt in the minds of the jury as to the guilt or innocence of the defendant, it must be resolved in favor of the defendant, and your verdict in that case should be for the defendant. I will charge this request. I might say that a reasonable doubt as to the guilt or innocence of the defendant does not mean any doubt that you may have; it means such doubt as a reasonable man might entertain after considering all the testimony in the case."

This added instruction, it is contended, is error because it does not permit the jury to make such inferences as they have a perfect right to do, from the lack of evidence that might otherwise have been produced.

This contention is fallacious. A lack of evidence may engender a reasonable doubt, but that circumstance, clearly, does not enter into defining what a reasonable doubt is. The question is not what facts or absence of facts may en-

gender a reasonable doubt, but rather, what in law consti-
tutes a reasonable doubt.

The definition given by the trial judge, while it may be
accurate in a general way in the popular sense of the term,
was inaccurate in the legal sense. See *Donnelly* v. *State,*
26 *N. J. L.* 601 (at *p.* 615) ; *State* v. *Linker,* 94 *Id.* 412.
The trial judge was not requested to define reasonable doubt
and what he said on the subject was more favorable to the
defendant than the application of the test as to when a
reasonable doubt may be properly said to exist, established
by the cases above cited. The test there stated is "that state
of the case which after the entire comparison and consider-
ation of all the evidence, leaves the minds of the jurors in
that condition that they cannot say they feel an abiding con-
viction to a moral certainty of the truth of the charge."

It is, therefore, quite obvious that the statement, that
a reasonable doubt is a doubt which a reasonable man might
entertain on the testimony, makes the reasonableness of
the doubt depend upon the circumstance whether a reasonable
person on the evidence would entertain any doubt. Such
a doctrine carried to its logical sequence may convert a
possible doubt into a reasonable one if a reasonable man
entertains the doubt. It is, therefore, clear that the defend-
ant derived a benefit through the erroneous conception of
the trial judge of what constitutes a reasonable doubt.

We deem it to be advisable in this connection to remark
that it would be both prudent and wise for a judge in stating
to a jury what is meant in law by the term, "reasonable
doubt" to refrain from expressing his own views on the sub-
ject lest he fall into error, but to follow closely the definition
of the term as given by Chief Justice Shaw, in *Common-
wealth* v. *Webster,* 5 *Cush.* (*Mass.*) (at *p.* 320), which defini-
tion was approved and adopted by our Court of Errors and
Appeals in *Donnelly* v. *State,* 26 *N. J. L.* 601 (at *p.* 615).
See also *State* v. *Linker,* 94 *Id.* 412.

Lastly, the twenty-second, twenty-third and twenty-fourth
assignments of error relate to comments made by the court

upon the testimony. The defendant's counsel claims that they were not justified by the facts in the case. But a careful reading of the testimony clearly shows that this claim is not borne out by the proof and that the comments made by the court did not exceed the bounds of legal propriety. We find nothing legally objectionable in the statement of the court, "that the crime of rape was a serious charge, one of the most serious charges that can be brought against a man aside from murder, that it deserves the most serious consideration."

Finding no error in the record, the judgment below must be affirmed.